UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

TIMOTHY L. WATKINS,                )
                                   )
                    Petitioner,    )      Case No. 5:05-cv-15
                                   )
v.                                 )      Honorable Wendell A. Miles
                                   )
DAVID GUNDY,                       )
                                   )      **REPORT AND RECOMMENDATION**
                    Respondent.    )
_____)

   This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C.

§ 2254.  Petitioner is serving a term of sixty to one hundred years, imposed by the Livingston County

Circuit Court on June 8, 2000, after a jury convicted Petitioner of voluntary manslaughter, MICH.

COMP. LAWS § 750.321.  In his *pro se* petition, Petitioner raises four grounds for relief, as follows:

  I.  Trial counsel was ineffective when he: (a) failed to investigate, interview witnesses and prepare; and (b) misrepresented the possible sentence that Petitioner could receive if he pleaded guilty.

  II.  The trial court denied Petitioner's right to withdraw his guilty plea in violation of Petitioner's Sixth Amendment right to trial by jury.

  III.  Petitioner's sentence of sixty to one hundred years constitutes cruel and unusual punishment in violation of the Eighth Amendment.

  IV.  The trial court denied Petitioner's request for substitute counsel in violation of Petitioner's Sixth Amendment right to counsel.

Respondent has filed an answer to the petition (docket #9) stating that the grounds should be denied

because they are without merit.  Upon review and applying the AEDPA standards, I find that

Petitioner is not entitled to habeas corpus relief.  Accordingly, I recommend that the petition be

denied.

## Procedural History

### A.  Trial Court Proceedings

Petitioner was accused of sexually assaulting and strangling Christine Ann O'Brien. The victim was last seen driving away from her home in Livingston County on July 18, 1995.  Her remains were found eight months later by local hunters.  Petitioner became a suspect after police received an anonymous tip from an inmate that Petitioner may have been responsible for the murder. As a result of the investigation, the Livingston County Prosecutor brought first-degree murder charges against Petitioner.  The following summary of the preliminary examination testimony was provided in the Presentence Investigation Report and reproduced in Respondent's answer to the petition (docket #9, 5-7):

> Brenda O'Brien testified that on July 18, 1995, her daughter (the victim, Christine O'Brien) had not returned home from work that day, and was concerned.  The following morning, Mrs. O'Brien had checked the victim's bedroom, and found that she had not returned during the night.  A family member had then driven to a local horse auction where the victim was known to frequent.  The victim's vehicle was spotted on July 19, 1995, and there was no sign of foul play.  The Michigan State Police were then contacted.

> Daniel O'Brien testified that on July 1[8], 1995, he had passed the victim while driving, and could not tell if anyone else was in the vehicle.  He was concerned when his daughter had not returned home, and assumed that she had stayed at a friend's home overnight.

> Dr. Lgubisa Dragovic, the Chief Medical Examiner of Oakland County, testified that on March 19, 1996, he determined the manner of death on Ms. O'Brien's skeleton was by strangulation.  Most of the bodily tissue was decomposed, and some tissue and the skeleton remained, in addition to her clothing.  There was no evidence of blunt force, nor gun shot.  A bone was missing in Ms. O'Brien's neck, which could be attributed to either animals or that the injury occurred to that specific area such as manual strangulation.  No drugs were found during toxicology examination.  It was determined to be a homicide, as all other manners of death were eliminated.  Under cross-examination Dr. Dragovic testified that Ms. O'Brien was fully clothed when murdered, and there was no evidence of sexual assault on the skeletonized remains.

- 2 -

Louis Freeman testified that on [sic] he and a friend had looked at property on Bennett Lake on March 15, 1996, and found the victim's remains in either an ice shanty or duck blind, near the water.  Neither he nor his friend touched any of the remains.  Mr. Freeman believed that someone had walked near the remains during the early Spring of 1996 as the weeds were trampled on.

Prisoner Hudson testified that he has been incarcerated with the Michigan Department of Corrections since 1991, and that he and the defendant shared a cell block in the Jackson Maximum Correctional Facility for several months.  The defendant informed Mr. Hudson that he had met the victim at a horse show, and was a suspect in the homicide.  The defendant stated that he had met the victim that day, and had somehow gotten her into his truck.  He had taken her to the woods, and raped her.  As he was afraid that she would report him to the police, the defendant had then taken a cord, strangled her, and threw her into the water.  The defendant was concerned that after the remains were found, spermatozoa would be found inside the victim.  Mr. Hudson then testified that the defendant believed that his mother would provide an alibi for him.  It was soon thereafter that Mr. Hudson had contacted the authorities with this information.  He did not receiving [sic] any kind of leniency in exchange for this information, nor did the defendant use this to brag about his masculinity.

Prisoner Cary testified that he has been incarcerated with the Michigan Department of Corrections since 1997, and that he has been incarcerated with the defendant.  The defendant had wanted the 'predator' label off his file, and he had asked Mr. Cary to assist him in the removal.  The two became friends, and the defendant had asked Cary how long DNA lasted on a body, etc.  The defendant had gained confidence in Mr. Cary, and stated that when he met the victim he may have placed his hand on her vehicle hood, and was fearful that his prints would be found.  He confessed to Mr. Cary that he was going to take the victim up to see horses, which is how he tricked her into getting into his truck.  The defendant then asked her for sex, she slapped his face, and he took his belt off and choked her.  He then admitted that he raped her in his truck after he murdered her.  The defendant admitted that he then took the victim's body to a duck blind, and buried her body there.  He felt that the body would decompose there due to the natural surroundings.  At this time, Mr. Cary sent a letter to the Michigan State Police regarding the defendant's admissions.  In August 1998, Mr. Cary was set up with a recording device, in conjunction with the Michigan State Police, in which the defendant confessed to the crime.

Mary Watkins testified that she is the mother of the defendant, [sic] who indicated that her son was home in bed ill when the murder occurred.  She believed that the defendant was accused of many things that he was not guilty of.

Randy Sowers testified that he was being held in the Shiawassee County Jail in December 1997 when the defendant was bragging about a homicide that he had

committed, and was angry that the victim's parents were in the Court when he was sentenced in Shiawassee County. The defendant admitted to Mr. Sowers that he had met the victim at a horse auction, and subsequently had a date with her. He then had intercourse with her, strangled her, and buried [her] in a duck blind. The defendant stated that his mother would provide an alibi.

Petitioner moved to suppress his taped conversation with Dominick Cary, in which he confessed to killing the victim. Following a hearing held on April 12, 2000, the trial court denied his motion to suppress. On April 28, 2000, Petitioner pleaded guilty to manslaughter and to being a fourth habitual offender. (Plea Transcript (Plea Tr.), 8; docket #20.) In exchange for his plea, the felony-murder charge was dismissed. (Plea Tr., 8.) Petitioner admitted that he strangled the victim with a belt and that he knew that his conduct could result in great bodily harm or death. (Plea Tr., 10.) Petitioner also admitted to being convicted of the following four previous felony CSC offenses: (1) assault with intent to commit criminal sexual conduct (1980); (2) assault with intent to commit criminal sexual conduct (1985); (3) third-degree criminal sexual conduct (1980); and (4) fourth-degree criminal sexual conduct (1976). (Plea Tr., 12-14.)

Before sentencing, Petitioner filed a *pro se* motion to withdraw his guilty plea asserting ineffective assistance of counsel by his appointed attorney, Mark Gatesman. At the motion hearing, Petitioner requested substitute counsel. (Motion to Withdraw Plea Transcript (Withdraw Plea Tr.), 4, 16; docket #21.) Petitioner complained that his counsel had failed to comply with his request for copies of various documents, including police reports. He also claimed that his counsel had made a statement to the newspaper that breached attorney-client confidences. (Withdraw Plea Tr., 8-9, 15.) Petitioner also asserted that counsel misinformed him as to the minimum sentence. (Withdraw Plea Tr., 26-27.) According to Petitioner, counsel told him on several occasions that he would get a minimum sentence of seven years. (Withdraw Plea Tr., 10-13, 26-27.) Petitioner

- 4 -

maintained that the trial court, prosecutor and defense counsel were all "crooked" and conspired to induce his plea. (Withdraw Plea Tr., 13-14, 25, 28-29.) Gatesman testified that he did not tell Petitioner that he was going to get seven years. (Withdraw Plea Tr., 23.) To the contrary, Gatesman allegedly informed Petitioner that considering the offense and his criminal history, he would not get the minimum possible sentence. (Withdraw Plea Tr., 24.) The trial court found that Petitioner had pleaded guilty knowingly and voluntarily and that his claims of ineffective assistance of counsel were without merit. Accordingly, the court denied Petitioner's motions to withdraw his plea and for substitute counsel. (Withdraw Plea Tr., 29-31.)

Petitioner was sentenced at a hearing held on June 8, 2000. In sentencing Petitioner to a term of sixty to one hundred years, the trial court stated:

> Mr. Watkins, you stand convicted of the killing of 24 year old Christine O'Brien. By all accounts, she was a wonderful, sweet, young woman who was giving and friendly. She was deeply loved by her family who you subjected to undescribable anguish and grief from the date of her disappearance on July 18, 1995 until March 15th 1996 when her remains were found by hunters. While you may want time to get a burial plot, you didn't afford her that right.

> You admitted in your plea proceeding that you placed your belt around her throat, and you choked her until she died. Killing by strangulation is a particularly cruel type of torture, and it appears that [sic] and clear to me that you had it within your power to stop at any time before she drew her last gasping breath.

> Fashioning an appropriate sentence for someone involved in the senseless killing of another human being is often and almost always difficult. The burden of doing so in a case such as this where you strangle your victim to death and then subject her family to the added torture of not knowing what happened to their daughter for eight months in addition is far more difficult.

> By report at 13 years of age, you were committed to the State Hospital at Northville where you remained until you were 17 years of age. You are now 54 years of age and this constitutes your - your seventh felony conviction. In 1976, you were convicted of criminal sexual conduct fourth. In 1980, you were convicted of assault with intent to commit criminal sexual conduct second and sentenced to three to fifteen years. In 1985, you were convicted of assault with intent to commit sexual

- 5 -

penetration and sentenced to six to ten years.  Your predatory conduct escalated over the years and reached its peak when you killed Christine O'Brien.

I am satisfied that you are a threat to society and are incapable of rehabilitation.  The thrust of the sentence which I am about to impose is to punish you and to protect society so that you will never again have the opportunity to victimize others.  If a by-product of this sentence results in some rehabilitation or message to the public another goal of sentencing will have been served.

I am electing to sentence you directly on the habitual fourth status.  And it is the – the sentence of this court that you be committed to the Michigan Department of Corrections for a minimum of 60 years, a maximum of 100 years.

I have chosen particularly to sentence you to numbers rather than – rather than life because if I were to sentence you to life you might be eligible for parole in about fifteen years.  I wish the record to reflect that I intend to sentence – that the sentence that I have given you is intended to send a message to the Parole Board or any other executive, particularly any future governor, that you spend the rest of your natural life behind bars.

(Sentencing Hearing Transcript (Sentencing Tr.), 18-21; docket #22.)  Immediately after the sentence was imposed, Petitioner proclaimed his innocence and expressed his intent to "pull [his] plea." (Sentencing Tr., 21.)

### B.    Direct Appeal

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals.  His brief, which was filed by counsel on September 12, 2000, raised two claims.  (*See* Def.-Appellant's Br. on Appeal, docket #23.)  First, Petitioner claimed that the trial court abused its discretion by not allowing Petitioner to withdraw his guilty plea.  Second, Petitioner asserted that the sentence imposed by the trial court constituted cruel and unusual punishment in violation of the Eighth Amendment.  On October 19, 2000, the Michigan Court of Appeals denied Petitioner's application for lack of merit in the grounds presented.  (*See* 10/19/00 Mich. Ct. App. Ord., docket #23.)

Petitioner filed a *pro per* delayed application for leave to appeal to the Michigan Supreme Court. Petitioner raised the same two claims raised before and rejected by the Michigan Court of Appeals. By order entered May 29, 2001, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* 5/29/01 Mich. Ord., docket #24.)

## C.   Post-Conviction Relief

On May 20, 2002, Petitioner filed a motion for relief from judgment in the Livingston County Circuit Court pursuant to M.C.R. 6.500 *et seq.* Petitioner raised eight claims of error, including the claims now presented in his application for habeas corpus relief. In an opinion and order issued on April 11, 2003, the trial court addressed the merits of Petitioner's claims and found them to be without merit. The circuit court entered an amended opinion and order on May 6, 2003, that was substantially the same as the original opinion and order. In an order issued on June 14, 2004, the Michigan Court of Appeals denied Petitioner's application "for lack of merit in the grounds presented." (*See* 6/14/04 Mich. Ct. App. Ord., docket #25.) The Michigan Supreme Court subsequently denied Petitioner's application for leave to appeal because he "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." (*See* 12/29/04 Mich. Ord., docket #26.)[1]

---

[1] When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001). If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either: (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 126 S. Ct. 2064, 2076 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied, Texas v. Penry*, No 05-1167, 2006 WL 639150 (U.S. June 12, 2006). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. This Court also may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.

---

Under M.C.R. 6.508(D)(2) and (3), a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised on direct appeal. In cases where the Michigan Court of Appeals and Michigan Supreme Court deny leave to appeal on the basis that a defendant "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," it is sufficiently clear that the supreme court intended to invoke a procedural bar. *See Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004), *cert. denied*, 544 U.S. 1002 (2005); *Abela v. Martin*, 380 F.3d 915, 923 (6th Cir. 2004). However, where as here, the trial court and the Michigan Court of Appeals have issued a merits determination, an order by the Michigan Supreme Court stating that a petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)," does not constitute a clear and express invocation of the procedural bar. *See Abela*, 380 F.3d at 923. In these circumstances, the claims raised in Petitioner's motion for relief from judgment are not procedurally defaulted.

*Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*. *Onifer*, 255 F.3d at 316. The review remains deferential

because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harris*, 212 F.3d at 943. However, the Sixth Circuit recently has clarified that where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts *de novo* review. *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

### Discussion

A plea of guilty is constitutionally valid if it is entered voluntarily and intelligently, as determined by the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 749 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). In order to find a constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, including the elements of the offenses for which he is pleading guilty. *See Bradshaw v. Stumpf*, 545 U.S. 175; 125 S. Ct. 2398, 2405 (2005); *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962). The defendant also must understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397

U.S. at 755; *Machibroda*, 368 U.S. at 493.  Finally, the defendant must have available the advice of competent counsel.  *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973);  *Brady*, 397 U.S. at 756;  *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970).

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328.  Moreover, the AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and a petitioner may overcome this presumption only by presenting "clear and convincing evidence" to the contrary.  28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir.), *cert. denied*, 545 U.S. 892 (2004).  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

In this case, the record supports the trial court's finding that Petitioner's plea was knowing and voluntary.  Petitioner stated that he was pleading guilty to manslaughter and to being a fourth habitual offender in exchange for the dismissal of the first-degree murder charge.  (Plea Tr., 8.)  Petitioner stated that he was satisfied with the services of his attorney.  (Plea Tr., 5.)  Petitioner was informed of and agreed to give up various rights as a consequence of his plea.  (Plea Tr., 6-7.)  When the trial court asked Petitioner the maximum that he could receive, Petitioner responded,

"life."  (Plea Tr., 5.)  Petitioner testified that no minimum sentence was required.  (Plea Tr., 5.)

Petitioner testified that he had not been promised by the court, prosecutor or his lawyer that he would

receive any specific type of sentence or that he would be treated more leniently if he pleaded guilty

than if he proceeded to trial.  (Plea Tr., 8-9.)  Petitioner further acknowledged that no one forced or

threatened him in order for him to enter the plea.  (Plea Tr., 9.)  Petitioner provided a factual basis

for the second degree murder charge, stating that he caused the victim's death by strangling her with

a belt.  (Plea Tr., 10.)  He also provided a factual basis for the habitual offender, fourth.  (Plea Tr.,

12-14.)  At the conclusion of the plea hearing, the trial court expressed its satisfaction that Petitioner

was entering his plea was "freely and voluntarily made."  (Plea Tr., 15.)

       The plea transcript is sufficient to show that the plea was voluntary and intelligent,

thus, a presumption of correctness attaches to the state court findings of fact and the judgment.  *See*

*Garcia*, 991 F.2d at 326.

I.      **Ground I:  Ineffective Assistance of Counsel**

       Petitioner claims in Ground I of his petition that he was denied his Sixth Amendment

right to the effective assistance of counsel.  Petitioner claims that counsel failed to conduct a

thorough investigation of the case and to advise him of possible defenses.  Petitioner also contends

that his attorney misinformed him as to length of the sentence he would receive if he pleaded guilty.

       In *Strickland v. Washington*, 466 U.S. 668, 687-88  (1984), the Supreme Court

established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To

establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's

performance fell below an objective standard of reasonableness; and (2) that counsel's deficient

performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.

A court considering a claim of ineffective assistance must "indulge a strong presumption that

- 12 -

counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 687.  In order to satisfy the "prejudice" requirement in a plea agreement context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Petitioner first claims that counsel failed to conduct a thorough investigation of the case and to advise him of possible defenses.  According to Petitioner, there were a number of potential defenses (insanity, irresistible impulse behavior, entrapment, etc.) that counsel should have investigated and discussed with him.  Contrary to his assertion, Petitioner stated on the record at the plea hearing that he was satisfied with the services of his attorney.  (Plea Tr., 5.)  The record shows that counsel was preparing for a trial by filing motions for discovery, motions *in limine* and a motion to suppress the taped confession.  (*See* Motion Proceedings Transcript, docket #17; Motion to Suppress/Motions in Limine Transcript, docket #19.)  In addition, counsel twice sought  and won adjournments of the trial date, stating that he needed additional time to conduct his investigation, interview witnesses and prepare for trial.  (*See* Motions to Adjourn Transcripts, dockets #16, 18.)  Thus, Petitioner's claim that counsel failed to investigate his case and prepare for trial are wholly unsupported by the record.

Moreover, Petitioner merely speculates that he may have had a meritorious defense.  As noted by the trial court in its amended opinion and order denying Petitioner's motion for relief from judgment, "Defendant fails to support his argument with any facts establishing any defenses to the crime charged."  Counsel is not ineffective merely because he fails to raise every possible defense.  *Meeks v. Bergen*, 749 F.2d 322 (6th Cir. 1984); *see Bowen v. Folz*, 763 F.2d 191 (6th Cir. 1985); *St. Pierre v. Walls,* 297 F.3d 617, 628 (7th Cir. 2002). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent

that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690-91.  Once the trial court ruled that the taped confession would be admissible at trial, it was entirely reasonable for counsel to conclude that he could not successfully pursue any of the "potential" defenses cited by Petitioner.  In light of the taped confession, it also was reasonable for counsel to advise Petitioner to plead guilty to the reduced charge of manslaughter in exchange for the dismissal of a first-degree murder charge that carried a mandatory sentence of life imprisonment without the possibility of parole.

Petitioner also claims that his attorney misinformed him as to length of the sentence he would receive if he pleaded guilty.  In his application for habeas relief, Petitioner contends that he was aware that the trial court could impose a maximum sentence of life imprisonment, but claims that his counsel mislead him as to his minimum sentence, telling him that he would receive a minimum sentence of seven years.  At the plea hearing, Petitioner stated that the maximum sentence that he could receive was life imprisonment.  (Plea Tr., 5.)  Petitioner testified that no minimum sentence was required.  (Plea Tr., 5.)  He further testified that he had not been promised any specific sentence if he pleaded guilty.  (Plea Tr., 8.)  At the hearing on Petitioner's motion to withdraw his plea, trial counsel denied making any such representation to Petitioner regarding his minimum sentence.  (Withdraw Plea Tr., 23.)  To the contrary, counsel testified that he informed Petitioner that considering the offense and his criminal history, he would not be sentenced at the bottom of the sentencing guidelines.  (Withdraw Plea Tr., 24.)  In ruling on Petitioner's motion to withdraw his plea and Petitioner's motion for relief from judgment, the trial court concluded that Petitioner's claim that counsel misled him as to his minimum sentence was without merit.  Petitioner fails to offer any evidence to rebut the record.  Moreover, considering the offense to which Petitioner pleaded guilty and his previous felony offenses, it was unfathomable that Petitioner could receive a minimum sentence at the bottom of the guideline range.

Finally, Petitioner has not carried his burden of showing causation between his counsel's alleged  deficient performance and his decision to plead guilty.  Under the second prong of *Hill*, a petitioner must show a reasonable probability that, but for counsel's defective advice, he

would not have pleaded guilty. *Hill*, 474 U.S. at 59; *Warner v. United States*, 975 F.2d 1207, 1214 (6th Cir. 1992). The only evidence supporting Petitioner's claim is his own statement that he would have insisted on a trial on all charges had he been appraised of all possible defenses to the charge against him. This is insufficient. "A mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990); *accord Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986). Aside from Petitioner's own allegations, which I find to be incredible in the circumstances, all the evidence supports a contrary finding. Accordingly, I cannot find that the decision of the trial court was an unreasonable application of *Strickland*.

II.     **Grounds II and IV:  Denial of Motions to Withdraw Guilty Plea and for Substitute Counsel**

In Ground II, Petitioner contends that the trial court violated his rights to due process to a fair trial and his Sixth Amendment right to trial by jury when it denied Petitioner's motion to withdraw his guilty plea. A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989); *Siers v. Ryan,* 773 F.2d 37 (3d Cir. 1985). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). I concluded above that Petitioner's plea was knowing and voluntary. A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991). Consequently, the question whether petitioner should have been allowed in the trial court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.[2]

---

[2] Petitioner claims that by denying his motion to withdraw, the trial court violated his constitutional rights to a trial by jury, to confront his accusers, and to cross-examine the witnesses against him. However, Petitioner expressly waived those rights when he pleaded guilty. (Plea Tr., 7.)

Petitioner also claims in his fourth ground for habeas relief that the trial court violated his Sixth Amendment right to counsel when it denied Petitioner's motion for substitute counsel at the proceedings on his motion to withdraw the guilty plea.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all "critical stages" of the criminal process.  *United States v. Wade,* 388 U.S. 218, 224 (1967).  The Sixth Amendment right to counsel has not been extended to allow an indigent defendant the counsel of his choice.  *United States v. Iles,* 906 F.2d 1122, 1130 (6th Cir. 1990).  "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate good cause to warrant substitution of counsel."  *Id.*  In order to determine whether a petitioner can show good cause, a reviewing court should consider the following factors: (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.  *U.S. v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004)*;  United States v. Mack,* 258 F.3d 548, 556 (6th Cir. 2001); *United States v. Jennings,* 83 F.3d 145, 148 (6th Cir. 1996).

In this case, Petitioner did not make his request for substitute counsel until after he pleaded guilty.  Second, the record establishes that the trial court made an adequate inquiry into the crux of Petitioner's dissatisfaction with his attorney and concluded that Petitioner was not denied the effective assistance of counsel in the plea proceedings.  Third, there was no evidence of a complete breakdown in the attorney-client relationship that resulted in a total lack of communication between Petitioner and his lawyer.  Defense counsel appeared on behalf of Petitioner at the hearing on the motion to withdraw his plea and continued to vigorously represent him at sentencing.  Finally, there is a strong public interest in avoiding delays in sentencing defendants who have pleaded guilty.  Considering these factors, Petitioner failed to show good cause to warrant substitution of his counsel.

- 16 -

As a result, the trial court's denial of Petitioner's motion for substitute counsel was not an unreasonable application of clearly established Supreme Court precedent.

  III.  **Ground III: Sentence**

    In his third ground for habeas relief, Petitioner claims that his sentence of sixty to one-hundred years is disproportionate and violates his Eighth Amendment right against cruel and unusual punishment.  Petitioner contends that his sentence is disproportionate under the analysis enunciated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990). Under *Milbourn*, the sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10.  It is plain that *Milbourn* was decided under state, not federal, principles.  *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994).  In addressing a claim that a sentence violated *Milbourn* proportionality, the Sixth Circuit stated that the issue was a matter of state law and that there was "no violation of a constitutional right because the United States Constitution contains no strict proportionality guarantee." *Lunsford*, 1995 WL 236677, at *2 (citing *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) and *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991)); *Terry v. Trippett*, No. 94-2077, 1995 WL 469424, at *1 (6th Cir. Aug. 7, 1995) (same).  Thus, Petitioner's proportionality claim is solely an issue of state law that is not cognizable in a habeas corpus action.

    Petitioner also claims that his sentence constitutes cruel and unusual punishment because it exceeds his life expectancy.  The United States Constitution does not require strict

proportionality between a crime and its punishment.  *Harmelin*, 501 U.S. at 965; *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583.  Under Michigan law, manslaughter is punishable by a maximum prison term of fifteen years.  MICH. COMP. LAWS § 750.321.   In this case, however, Petitioner was sentenced as a fourth habitual felony offender.  MICH. COMP. LAWS § 769.12.  Under the habitual offender statute, Petitioner could be sentenced "to imprisonment for life or for a lesser term."  MICH. COMP. LAWS § 769.12(1)(a).  A sentence within the maximum sentence set by statute does not normally constitute cruel and unusual punishment.  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000); *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995).  Moreover, "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Petitioner was not sentenced to death or life in prison without the possibility of parole, and thus, his claim is not subject to Eighth Amendment review.  Even if Petitioner's claim was reviewable by this Court, it is without merit.  At the plea hearing, Petitioner admitted to strangling the victim to death with a belt.  He also admitted to committing four previous felony sexual offenses.  "[A] State is justified in punishing a recidivist more severely than it punishes a first offender."  *Solem v. Helm,* 463 U.S. 277, 296 (1983).  Given the nature and extent of Petitioner's past crimes, the state is justified in deterring recidivist felons such as Petitioner with a long sentence.  *See Ewing v. California,* 538 U.S. 11, 29-30 (2003).  This clearly is not a case in which an "extreme disparity" exists between Petitioner's sentence and the heinous crime that he admitted to committing.  *See Galloway v. Howes,* 77 F. App'x 304, 305-06 (6th Cir. 2003) (Sentence of 40 to 100 years' imprisonment for armed robbery did not violate Eighth Amendment prohibition of cruel and unusual

punishment, where sentence did not exceed statutory maximum sentence of life imprisonment, and defendant was sentenced as a fourth habitual offender).  Petitioner, therefore, is not entitled to habeas corpus relief on this ground.

### IV.    Motion to Amend Petition

On April 6, 2006, the Court received a pleading from Petitioner entitled "PRO PER MOTION OF SUPP/MOTION OF LEAVE TO APPEAL FROM RELIEF FROM JUDGMENT (MCR. 6.500) HABEAS CORPUS" (docket #29).  Petitioner's pleading is very difficult to decipher, but he appears to seek an amendment of his petition to add a new claim of ineffective assistance of trial and appellate counsel that was not presented in the state courts or in his original habeas petition. It also appears that Petitioner seeks to exhaust his claim in the state court by filing a motion for relief from judgment.  Petitioner presents his new claim as follows (verbatim):

> Ineffective assistance of trail & applate court counsel in the denial of his right to withdraw a plea that enhanced his sentence of habitual offender 4th (769.12)

> Attorneys failure to amend the proper sentence plea agreement was a constitutional violation of ineffective assistance by the petitioners counsel being that defendant trial counsel was his only way to communicate to the court the prosecutor took full advantage of trial counsel non-objection to the enhancement of the sentence agree to in the plea agreement this constitutes reason to withdraw plea.

(Motion to Amend., 11 .)  Petitioner does not provide any further explanation or factual support for his claim.

Under 28 U.S.C. § 2243, a habeas petition may be amended or supplemented as provided in the Federal Rules of Civil Procedure.  After a responsive pleading has been filed, Rule 15(a) allows pleading amendments with leave of the court and provides that "leave shall be freely given when justice so requires."  In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc." *Id.* at 182.  Amendments made after the one-year statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings "ar[i]se out of the same conduct, transaction, or occurrence." FED. R. CIV. P. 15(c)(2); *see also Mayle v. Felix*, 125 S. Ct. 2562 (2005).

In light of the cryptic nature of Petitioner's proposed new claim of ineffective assistance of counsel, it is difficult to determine whether the amendment relates back to the original petition.  Even if the amendment relates back, Petitioner's motion will be denied because the amendment would be futile.  From what I can discern from Petitioner's proposed amended pleading, he claims that his trial and appellate counsel were ineffective for not objecting to or challenging his plea to being a fourth habitual offender.  As set forth above, Petitioner knowingly and voluntarily pleaded guilty to manslaughter and to being a fourth habitual offender.  (Plea Tr., 4.)  Petitioner admitted at the plea hearing to committing four previous felony convictions  (Plea Tr., 12-14).  Petitioner fails to assert on what basis his counsel could or should have challenged his habitual offender plea.  The fact the Petitioner ultimately received a long sentence under the habitual offender statute does not render his counsels' performance ineffective.  Accordingly, Petitioner's motion to amend his petition (docket #29) should be denied.

### Recommended Disposition

For the foregoing reasons, I recommend that Petitioner's motion to amend the petition (docket #29) be denied.  I further recommend that the habeas corpus petition be denied for lack of merit in the grounds presented.


Date:  September 20, 2006                        /s/ Ellen S. Carmody
                                               ELLEN S. CARMODY
                                               United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).